[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action arises out of a claim for personal injuries as a result of a motor vehicle accident.
The following factual scenario is determined from the CT Page 9337 evidence: On October 17, 1991 at about 2:52 p.m. Andrea R. Ward, hereinafter (the plaintiff) was operating a 1989 Pontiac in a westerly direction on Good Hill Road, a public highway, in the town of Oxford.
At about the same time James J. Frank, hereinafter (the defendant) was operating a 1984 Chevrolet pick-up truck in a southerly direction on Reality Road, another public highway in the town of Oxford. Reality Road intersects with the north side of Good Hill Road so as to form a "T" intersection. There is a stop sign on Reality Road at the intersection; and the traffic proceeding on Good Hill Road has the right of way at the intersection.
As the plaintiff was approaching the intersection, the defendant was stopped on Reality Road in compliance with the stop sign. The weather conditions were that a light rain was falling and the roads were wet.
Suddenly the defendant entered Good Hill Road in front of the plaintiff attempting to make a left-hand turn into Good Hill Road to proceed in an easterly direction. The plaintiff in response to the defendant's maneuver, put her brakes on but her vehicle skidded on the wet road causing it to slide over to the center line of Good Hill Road into the eastbound lane of Good Hill Road striking the defendant's vehicle. The points of impact on the vehicles were as follows; the left front of the plaintiff's vehicle and the left rear wheel section of the defendant's vehicle. There was minimal damage done to both vehicles.
After the impact the left front portion of the plaintiff's vehicle came to rest in the eastbound lane of Good Hill Road and a rear portion of the defendant's vehicle was located in the westbound land of Good Hill Road.
At the time of the accident the plaintiff was wearing her seat belt and shoulder harness. As a result of the impact her head went forward and then backward, causing the back of her head to strike the head restraint located on the back of the driver's seat.
As a result of the accident the plaintiff claims injuries to her head, neck, face, and jaw, even though the plaintiff had not sustained any direct blow to her face or jaw nor were there any resulting physical marks of injury on her body. CT Page 9338
Later in the day on October 17, 1991 the plaintiff went to the Rader Chiropractic Clinic where she came under the care of Maura C. Lyddy, D.C. Prior to this present accident she had been treated at the Rader Clinic on two prior occasions; and on these occasions she was treated by Gary Rader, D.C., another principal at the clinic. On one occasion it was for an acute cervical strain/sprain injury and on the other occasion it was for low back pain; and both occasions were caused by accident.
Thereafter on January 13, 1992 the plaintiff was referred to Dr. Arthur M. Seigel for a neurological examination in connection with complaints of persistent headaches. As a result of this examination it was Dr. Seigel's impression that the plaintiff had a cervical sprain. The plaintiff at this time stated that any jaw pain that she had previously had subsided. Dr. Seigel saw the plaintiff one more time on April 28, 1992 with continuing complaints about headaches and neck pain.
Subsequently the plaintiff was referred to Dr. Patricia Richard for evaluation and treatment for temporomandibular joint (T.M.J.) and facial pain. On December 1, 1992 the plaintiff was examined by Dr. Richard and her impressions were that the plaintiff suffered from post-traumatic headaches, displacement of both T.M. joints, cervical sprain, lumbosacral strain and shoulder strain. Thereafter Dr. Richard commenced a course of treatment, which included the preparation and insertion of several devices in her mouth to relieve the T.M.J. complaint. This exercise of treatment in connection with the T.M.J. complaint lasted through June 21, 1994.
On May 25, 1994 a computed tomography (C.T.) scan was performed at the Hospital of St. Raphael in New Haven, Connecticut to ascertain T.M.J. involvement. The conclusions reached by the scan were that; there was no evidence of anterior displacement of the menisci, fair range of motion. There was no evidence of anterior displacement in either the closed or open areas, and that there was a good range of motion.
Later at the request of the defendant the plaintiff was examined by Dr. Theodore Splaver on January 24, 1995. During the examination no noise or joint sounds were heard and no meniscus movement was observed. Dr. Splaver concluded that the plaintiff had no T.M.J. disfunction, and that any other facial pain was caused by some type of muscle problem and not from an accident. CT Page 9339
The plaintiff claims that she has incurred approximately Eighteen Thousand-Five Hundred ($18,500) Dollars in medical expenses. Most of these bills were incurred for treatment at the Rader Chiropractic Center and Dr. Patricia Richard. The plaintiff claims a permanent injury, suffering a 15% loss of the whole person. Also the plaintiff claims that the cost of future treatment will approximate $2,000 per year for the rest of her 34 years life expectancy.
The first issue to be decided is that of liability. There is no doubt that the plaintiff had the right of way; and that the defendant had to grant her the right of way at the intersection. There is no claim of speed or erratic operation on the part of the plaintiff as she approached the intersection.
As she was at the intersection or so close to the intersection so as to cause an immediate hazard, the defendant pulled out in front of her and blocked her way. Immediately the plaintiff applied her brakes but due to the wetness of the road, her vehicle proceeded to cross the center of Good Hill Road and the vehicles collided. The plaintiff was using reasonable care in the course of trying to avoid the collision and but for the wetness of the road the accident might have been avoided. Therefore, the court concludes that the defendant's negligent operation of his vehicle was the substantial factor and a proximate cause for the accident.
The primary factual issue confronting the court is whether the fault of the defendant was a proximate cause of the damages alleged by the plaintiff.
 The question of whether the plaintiff's injuries are proximately caused by the defendant's negligence depends upon whether they are traceable in causal relation to the accident. The test is whether the defendant's conduct was a substantial factor in causing the plaintiff's injuries and this is one of fact for the jury. Hofacher v. Fox, 142 Conn. 179, 184, 112 A.2d 217; James Perry, "Legal Cause," 60 Yale L. J. 761. The causal relation between the defendant's wrongful conduct and the plaintiff's injuries must be established in order for the plaintiff to recover damages. Miranti v. Brookside Shopping Center, Inc., 159 Conn. 24, 27, 266 A.2d 370; Lombardi v. J. A. Bergren Dairy Farms., Inc., 153 Conn. 19, 22, 213 A.2d 449; CT Page 9340 Connellan v. Coffey, 122 Conn. 136, 139, 142, 187 A. 901. See Bogard v. Tucker, 164 Conn. 277, 286-87, 320 A.2d 803.
 Vetre v. King, 181 Conn. 136, 139 (1980).
It is for the court to evaluate the evidence as to the nature of the accident, the damages to the vehicles and the credibility of the medical testimony. Dr. Rader testified that he had treated the, plaintiff from June 8, 1988 and ending on October 15, 1991 for a cervical strain and sprain which was claimed to be caused by a prior automobile accident.
Thereafter the plaintiff injured her back on June 21, 1991; and during this time to October 15, 1991, the plaintiff was treated for her cervical spine and low back.
After the October 17, 1991 accident, Dr. Rader treated the plaintiff for cervical neck pain and low back pain for a protracted period of time. During this period of time, Dr. Rader did not apportion the cost of treatment between the cervical spine and the low back. There is no claim by the plaintiff that she injured her low back in the October 17, 1991 accident.
Dr. Siegel testified that the plaintiff told him that she was in her usual state of excellent health until she was in the October 17, 1991 accident; and that she had no prior history of head or neck injury. She did not mention her work-related low back injury. She did mention that she had jaw pain following the head injury but that the jaw pain had subsided. At no time did she mention to Dr. Seigel the prior cervical neck treatment that she had received from Dr. Rader in 1988.
Dr. Patricia Richard testified that the T.M.J. problems that she claims the plaintiff had were caused by the trauma of the accident. However, she was not told that the plaintiff clinched and gritted her teeth at night or when she was angry or upset. The plaintiff did not tell Dr. Richard that she had been involved in prior accidents where she sustained head, neck and low back injuries. Dr. Richard did not have the benefit of the CT scan which showed no evidence of a T.M.J. problem.
Dr. Splaver testified that any of the plaintiff's complaints related to facial complaints were not related to any T.M.J. disorder. In examination he did not notice any clinching in either CT Page 9341 of the joints. It was his opinion that the plaintiff did not have a T.M.J. disorder. Further, he stated whiplash is an unlikely cause of a T.M.J. disorder and his opinion was supported by the studies done by reputable medical journals. Dr. Splaver stated that most likely causes of T.M.J. disorder are a direct blow to the fact, stress, clinching and grinding of teeth. Dr. Splaver further stated that much of the course of treatment rendered by Dr. Richard was not being presently used nor a proven method for a T.M.J. disorder.
As to the impact between the vehicles, it would seem to have been one of slight contact. There was very little damage done to either vehicle; and no cost of the repairs was presented to the court.
 In a personal injury action, the [jury] are not obliged to accept the ultimate opinion of the expert witnesses who testified and may reject their opinions on the ground that they found that the opinions were based on subordinate facts which they did not find proven. Hally v. Hospital of St. Raphael, 162 Conn. 352, 358, 294 A.2d 305. The [jury] were confronted with conflicting evidence and the choice of the more credible evidence was for them to make. Dulski v. Appel, 172 Conn. 187, 191, 374 A.2d 177; Birgel v. Heintz, 163 Conn. 23, 30, 301 A.2d 249.
 Vetre v. Keene, supra, 140.
To be entitled to damages, the plaintiff must establish a causal connection between her injuries and physical condition which she claims resulted from the accident and this causal connection must rest upon more than surmise. Budney v. Zalot, 168 Conn. 388,362 A.2d 861. It was incumbent upon the plaintiff to prove by a fair preponderance of the evidence that the defendant's conduct was a substantial factor in producing the injuries or part of the injuries claimed by the plaintiff. Mahoney v. Beatman, 110 Conn. 184,196, 147 A. 762. The credibility of the witnesses and the weight to be accorded to their testimony lie within the court's province. The court may accept all, some or none of the testimony of the witnesses and an assessment of damages for the plaintiff's claimed injuries is a matter for the court's determination.Desmarias v. Pinto, 147 Conn. 109, 110-11, 157 A.2d 596. CT Page 9342
The court concludes that the plaintiff has failed to sustain the burden of proving by a fair preponderance of the evidence that the conditions of which she complained were caused by the October 17, 1991 accident.
The impact between the vehicles was slight with very little resulting property damage. The plaintiff was thrown back and forth after the impact; but she did not strike her fact on anything.
She claimed a cervical problem as a result of the accident; but she had been treated by Dr. Rader for a substantial period of time before the accident for the same type of problem. Subsequent treatment by Dr. Rader also included treatment for an unrelated injury; and at no time did Dr. Rader segregate his fees as it may have related to any cervical problem.
At no time when the plaintiff saw Dr. Seigel or Dr. Richard did she mention that she had had a prior cervical problem which had been treated for a substantial period of time. Also, she did not mention to them that she had a problem of grinding her teeth prior to the auto accident of October 17, 1991.
Dr. Splaver concluded that the plaintiff had not sustained any injury to her T.M.J.'s as a result of the accident. His opinion was buttressed by a CT scan that showed no problem in the jaw. Further, medical literature supports his opinion that any type of whiplash sequence would not cause a T.M.J. problem.
The plaintiff has failed to remove her claimed injuries and expenses from the field of speculation and conjecture. She has not proven that the treatment was related to the accident or that the fees were related to said accident.
However, there is one other issue that must be addressed, i.e. nominal damages. The defendant was found negligent by the court and the effect of his liability was "to establish the fact that a technical legal injury had been done by them to the plaintiff, and this entitled the plaintiff to at least nominal damages. Schmeltzv. Tracy, 119 Conn. 492, 496, 177 A. 520; Dewire v. Hanley,79 Conn. 454, 458, 65 A. 573; Parker v. Griswold, 17 Conn. 288, 302."Keller v. Carone, 138 Conn. 405, 406-407, 85 A.2d 489 (1951);Dimmock v. New London, 157 Conn. 9, 15-16, 245 A.2d 569 (1968).
Riccio v. Abate, 176 Conn. 415, 419, (1979). CT Page 9343
There is no dispute that a legal injury has been caused to the plaintiff; and she should be compensated for this intrusion. Taking into consideration the economic factors of the day, the court concludes that an award of Twenty-Five Hundred ($2,500.00) is justified as nominal damages.
Accordingly, judgment may enter in favor of the plaintiff in the amount of Twenty-Five Hundred ($2,500.00) Dollars. Costs are assessed.
BY THE COURT, Byrne, J.